8802

## DAVIS v. LITTLEFIELD.

(81 S. E. 487.)

MASTER AND SERVANT. LIABILITIES FOR INJURIES TO THIRD PERSONS. NEW TRIAL. MISCONDUCT OF JURORS.

1. Where a resident of Chicago, whose family was temporarily established in Aiken, provided an automobile for the health and pleasure of his family, which his son had permission to use, and which such son, or one of the other sons, ran whenever their mother desired to use it, he was liable for the negligence of such son while driving the automobile for a ride for his pleasure, it not being his mother's intention to take part in the trip in any manner; and the owner, though not liable for the negligence of his son, as such, was liable for the negligence of his servant in the course of his employment.

2. In an action for personal injuries caused by a team of mules becoming frightened at an automobile and running away, the Court did not abuse its discretion in denying a new trial because one of the jurors accepted the hospitality of, and spent night in the house of, the owner of the mules, who was also suing the automobile owner for injuries to the mules sustained at the same time, where it appeared that the juror did not know of such person's interest in the suit until too late, and that the case was not discussed.

Before GAGE, J., Aiken, November, 1913. Affirmed.

Action by Alonzo Davis against A. S. Littlefield and R. S. Littlefield. From a judgment for the plaintiff against A. S. Littlefield, he appeals.

The case was stated in appellant's brief, as follows:

"Mr. A. S. Littlefield, the defendant-appellant herein, who is a resident of Chicago, rented a house in Aiken for the winter season of 1911-1912, and established his family there. Mr. Littlefield was, much of the time, in Chicago, where he was engaged in business. Mrs. Littlefield, who

FOOTNOTE—The general question of the responsibility of the owner when automobile is being used by servant or another for his own pleasure or business is treated in notes in 1 L. R. A. (N. S.) 235; 9 L. R. A. (N. S.) 1033; 14 L. R. A. (N. S.) 216; 21 L. R. A. (N. S.) 93; 26 L. R. A. (N. S.) 382; 33 L. R. A. (N. S.) 79; 37 L. R. A. (N. S.) 834, and 47 L. R. A. (N. S.) 662. And as to the liability where automobile is being used by a member of owner's family, see note in 41 L. R. A. (N. S.) 775.

was in ill health, was in Aiken during the entire winter. Mr. Randolph S. Littlefield, a son, then of the age of nineteen, was also in Aiken, and during the Christmas holidays two other sons spent their time there. Mr. Littlefield provided a Pearce Arrow automobile, as he testified, 'for the health and pleasure' of his family. Mr. Randolph Littlefield ran this car most of the time. When the other sons were in Aiken during the Christmas holidays they ran the car when they pleased. Mr. Randolph Littlefield registered the car in the office of the clerk of the Court of Aiken county, in the name of his father, A. S. Littlefield, who was the owner thereof. Randolph Littlefield had the permission of the father to use the machine for his pleasure when he saw fit; and whenever it was the desire of Mrs. Littlefield to use the machine, either Randolph Littlefield or the other sons, when they were in Aiken, would run the car for her.

"On the 13th day of February, 1912, while A. S. Littlefield, the father, was in Chicago, Randolph Littlefield, having some friends stopping at the tourist hotel in Aiken, the Park-in-the-Pines, took the car out and started to the Park-in-the-Pines to get these friends to take them to ride; no one accompanied him. His mother was at home, and it was not her intention to take part in this trip in any manner.

"While Randolph Littlefield was going to the Park-in-the-Pines to get these friends, whom he intended to take to ride, for his own personal pleasure and theirs, he encountered the plaintiff, Alonzo Davis, who was driving a pair of mules. The mules became frightened. Exactly what occurred between Davis and Randolph Littlefield is in dispute. As a result of the occurrence, the team ran away, and Davis was thrown out and alleges that he was injured. He brought suit against A. S. Littlefield and Randolph S. Littlefield, jointly, alleging, in effect, that Randolph Littlefield occupied the position of servant to his father in running the

machine, and that both father and son were responsible for his injury.

"The case was tried before Judge Gage and a jury, in November, 1913, and the jury rendered a verdict against A. S. Littlefield alone for the sum of four hundred and seventy-five dollars. After the verdict a motion for a new trial was made, both on the ground that the verdict against A. S. Littlefield was unsustainable under the facts and the law of the case, and on the ground of misconduct on the part of one of the jurors. The facts in connection with the latter ground will hereafter be stated. The motion was refused and judgment entered up, from which this appeal is taken.

"Before discussing what we conceive to be the law of this case, there are two questions which we desire to bring to the Court's attention by way of elimination.

"The alleged accident, upon which this suit is based, occurred on February 13, 1912. The legislature, on February 16, 1912, passed an act (which became law some days later, and a considerable time after the date of the accident in question) by which a party injured in this State, in an automobile accident, was given the right to attach the car which caused the injury. We desire particularly to call the Court's attention to the fact that this act does not purport, in any manner, to create a new liability or to change the existing rules of law, which we shall, hereafter, contend govern this case, but merely provides a new right of attachment in addition to the existing rights under the attachment statutes.

"Should it in any manner be contended that this statute creates or purports to create, a new liability, the facts of its passage after the date of the accident in question would dispose of this new statute as affecting the present case. We might also add that if the statute had been in existence on the 13th day of February, 1912, and should a contention be made that it purports to create a new liability, and to make the owner of the car responsible for the act of a third party,

who did not bear to the owner or relationship of servant, and from whose act the owner could not be held responsible, under the existing rules of law—we would, then, submit that such a statute would be unconstitutional as arbitrarily taking property without due process of law, and as being unwarranted class legislation.

"II. Another consideration that should be eliminated to the possible contention that A. S. Littlefield is liable because he placed within the reach of his minor son an alleged dangerous instrumentality, to wit, an automobile. The proof in the case showed that the minor son, Randolph, was an expert in the running of automobiles; but this entire matter may be eliminated from the case for the very simple reason that no allegation to fit such contention appears in the complaint, and·such an idea was in no manner made the test of A. S. Littlefield's responsibility by the presiding Judge in his charge.

. "After the trial had closed and the jury was considering its verdict, it came to the attention of one of counsel that one of the jurors had accepted of the hospitality and had spent the night in the house of a Mr. Weeks, who is personally prosecuting an action against Mr. A. S. Littlefield for injury to his team, which was being driven by Alonzo Davis at the time of the alleged accident, and which, the said Mr. Weeks claims, was injured in said accident. After the jury had rendered its verdict this report was confirmed, and was made the basis of a motion for a new trial. Affidavits were presented pro and con; the Court examined the juror in open Court, and then filed an order refusing the motion, which is printed in the brief and fully states the facts. The Court criticised the action of both Mr. Weeks and the juror, but on the ground that both of them swore that the case was not discussed, and in the exercise of its discretion, refused the motion.

"Upon the authority of *McGill* v. *Ry.*, 75 S. C. 177, 55 S. E. 216, we submit that the motion should have been granted, and that its refusal constituted abuse of discretion.

"The case above cited holds that the accepting of the hospitality of a law agent by a member of the trial jury constituted a ground upon which the verdict should be set aside, and that to fail to do so amounts to abuse of discretion. The reasoning of the Court is the basis of the motion in the present case; that the stream of justice should remain unpolluted; that the administration of the law should be pure and above any possibility of taint or criticism, and that the Courts should not only be pure, but should be above any suspicion of impurity.

"We submit that the facts adduced here are on all fours with the facts of the Lexington case. It is true that there was no proof that the case was discussed between Mr. Weeks and the juror—that could not be proven in the nature of things, and was not proven in the Lexington case—but we submit that with the question not brought closely before the Court that it will not be safe for the Court to establish the proposition that a juror, although he claims not to discuss the case is, in the future in South Carolina, at liberty, during the trial of a case, to accept the hospitality and to spend the night at the home of a party who is pecuniarily interested in the outcome of the litigation."

*Messrs. Davis & Croft* and *Hendersons,* for appellant, cite: *Automobiles not dangerous machines:* 59 S. E. 340; David's Motor Vehicles, sec. 206. *Master and servant: Smith* v. *Jordan,* 97 N. E. 761. *Parent and child:* Jaggard Torts 160; 20 Cyc. 1665; 36 Am. Rep. 336; 3 N. W. 199; *Smith* v. *Davenport,* 36 Am. St. Rep. 737; 33 Kan. 580; 97 Am. Dec. 381; 13 Kan. 348, 350. *Liability of master for acts of chauffeur:* Berry Automobile Law 144; David's Motor Vehicles 205, 206, 212, 216; 127 App. Div. (N. Y.) 580; 152 Fed. 481; 66 Atl. 525; 107 N. W. 133; 94 N. Y. Supp. 772; 93 N. E. 801. *Parent and child:* Berry Automobiles 141; David's Law Motor Vehicles 208, 210; 59 S. E. 338; 108 N. Y. Supp. 228; 103 N. W. 946; 97 N. E. 761; 60 So. Rep. 151; 75 Central Law Journal 43; 71 Atl.

296; 39 L. R. A. 224, criticised.    *Misconduct of juror:* 75
S. C. 177.

*Mr. Wm. M. Smoak,* for respondent, cites: *As to master
and servant:* 133 Pac. 1020.    *As to misconduct of juror:*
75 S. C. 180.

April 21, 1914.

After reciting the foregoing statement of facts, the opin-
ion of the Court was delivered by MR. JUSTICE FRASER.

There are but two questions in this case:

1st. Is A. S. Littlefield responsible under any view of the
case?    2d. Was there abuse of discretion in not granting
a new trial on account of misconduct on the part of a juror?

The appellant testifies as follows:

"Q. You sent it down here for the comfort of your fam-
    ily?    A. For anyone that wanted to use it.    Q.
    Any member of your family that wanted to use it
    could do it?    A. Yes. sir."

The sole purpose of having the car was for the pleasure of
the family.    The family for whose use the car was sent
consisted of Mrs. Littlefield, and three sons, two of whom
were college students and only in Aiken for a short time.
The principal use, therefore, was for the wife and this son,
Randolph, who drove the car on the day of the accident.
The wife was not in good health and used the car but little
and then Randolph drove.    The family use, therefore, con-
sisted mainly in Randolph's use.

The authorities cited by appellant concede that if Ran-
dolph was driving his mother, the appellant would be
responsible, and the ground of responsibility would have
been that in driving his mother, Randolph would have been
in the performance of the appellant's business.    If Randolph
had employed a hired driver to take Randolph and his
friends out for a pleasure ride, the responsibility of appellant
would have been equally clear.    The machine would have
been used for its sole purpose, *i. e.,* the family pleasure.    The

fact that the son drove himself did not in any way change the business for which the machine was used. The illustration used by Judge Gage was forceful, clear and accurate. The general proposition that a servant in the transaction of his master's business shall have no purpose of his own is nowhere maintained. When a master sends his servant to town on the master's business, we know of no Court that has held that if the servant is induced to go mainly because he wants to make purchases for himself, the private purpose of the servant will relieve the master from liability for the negligence of his servant in the conduct of the master's business. The parent is not liable for the negligence of the child by reason of the relation of parent and child, yet, if the child is the agent of the father, then the existence of the relation, parent and child, does not destroy the liability of the principal for the acts of the agent. So here the nonliability of the father for the acts of the son does not destroy the liability of the master for the acts of his servant done in the course of his employment.

Upon the second question:

The case cited by appellant, *McGill* v. *Railway,* 75 S. C. 177, 55 S. E. 216, does not sustain him. In that case the Court says:

"In the first place, the reasons for refusing to interfere with the discretion of a Circuit Judge in matters involving the purity of the jury box and the integrity of verdicts are peculiarly strong. He is in the atmosphere of the trial, and has opportunity to estimate the character and intelligence of the jurors, as well as of the person charged with improper conversation or corrupt dealings with them. He has opportunity also to consider the verdict in the light of the evidence and the sources from which the evidence comes, and determine whether the verdict has so little support as to indicate corrupt or improper influence. These and perhaps other things afford the trial Judge such superior means of coming to a just conclusion, that before

disturbing his order on such a subject, an appellate Court should require very clear evidence of abuse of discretion."

In this case the juror did not know of the interest of Mr. Weeks until too late. The showing is that he did not discuss the case. The showing also is that the Circuit Judge approved the verdict.

The judgment appealed from is affirmed.

MR. JUSTICE HYDRICK, *dissenting.* I dissent from the conclusion that appellant is liable, and concur in the disposition of the other grounds of appeal.

MR. JUSTICE GAGE did not sit in this case.