15337

LEAGUE v. NATIONAL SURETY CORPORATION

(17 S. E. (2d), 783)

*Mr. Stephen Nettles* and *Mr. Dakyns B. Stover,* both of Greenville, for appellant,

*Mr. E. P. Riley* and *Messrs. Wyche, Burgess & Wofford,* all of Greenville, for respondent,

December 2, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

This is an action against National Surety Corporation, the surety on the official bond of one George Thompson, a State highway patrolman, for damages to a truck and trailer alleged to have been caused by the negligence and unlawful conduct of the patrolman while acting as such on the night of April 1, 1940. The damages to plaintiff's truck were sustained when it collided with another truck which had been stopped on the highway by the officer. The case resulted in a verdict and judgment for the plaintiff in the sum of $900.00. The appeal of the defendant surety company is based on alleged error of the trial Court in refusing its motion for a directed verdict, and the refusal to grant a new trial.

Thompson entered upon the discharge of his duties as a highway patrolman in February, 1940, and resigned his office the day following the accidental collision.

The bond sued on was issued by National Surety Corporation to the South Carolina Highway Department, and covered all highway patrolmen, including Thompson. It was executed pursuant to the provisions of Section 6004, 1932 Code, and, as to Thompson, was in the penal sum of $2,000-.00. The condition of the bond is as follows:

"Now, the condition of the above obligation is such, that if the above bound employee or employees or those accepted by the Surety and added later shall well and truly perform the duties of the said office, as now or hereafter required by law during the whole period he or they may continue in the said office, and shall make a full, prompt and proper accounting of all funds, and property, coming into his or their hands

and shall pay any judgment recovered against him in any Court of competent jurisdiction upon a cause of action arising out of breach or abuse of official duty or power, and damages sustained by any member of the public from any unlawful act of such officer, then the above obligation to be void and of none effect or else to remain in full force and virtue."

The issues made by the appeal arise out of the following facts:

On the night of April 1, 1940, about 11:30 o'clock, Thompson, dressed in the complete uniform of a highway patrolman, with cap, badge, gun, and flashlight, was riding a motorcycle of the department along the public highway between the town of North and the City of Orangeburg. He was traveling in the direction of Orangeburg, and it is admitted that he was drunk, having imbibed too much wine. At a point on the highway about six miles from the Town of North and twelve miles from Orangeburg, he and the motorcycle landed in a ditch, on the right-hand side of the highway. Being unable to move the motorcycle, Thompson abandoned it and walked out upon the highway and began stopping traffic with the idea of obtaining a ride.

It is in evidence and not disputed that the patrolman was off duty on a thirty-six hour leave which he wished to spend with his family in Columbia, but had missed the road, and at the time he lost control of the motorcycle he was en route back to Orangeburg where he was regularly stationed. Thompson first stopped a large fertilizer truck coming from the direction of Orangeburg. While this truck was still stationary, or had just commenced to move forward again, another truck, loaded with gasoline, approached from the direction of Orangeburg, which Thompson with his flashlight also flagged to a stop. Thompson requested the driver, one Bice, to turn around and give him a ride to Orangeburg. This the driver refused to do because he had just left Orangeburg and was headed in the opposite direction.

The two halted trucks were about eighty yards from the crest of an ascending grade and were on their right-hand side of the highway. When the patrolman spoke to the driver of the second truck he was standing practically in the middle of the highway. He told Bice, the driver, "Well, go ahead," and both trucks began to slowly move forward. At this moment the patrolman says that he looked up the road toward North and saw the plaintiff's truck coming over the crest of the hill, going in the direction of Orangeburg. He stepped to the middle of the lane on which the approaching truck was traveling and commenced to flag it, his purpose still being to obtain a ride to Orangeburg.

The driver of the plaintiff's truck testified that he saw the lights of the two trucks on his left as he came down the hill, and saw no obstruction on his side of the highway until the patrolman suddenly appeared in his path at a point about eight feet away. In order to avoid running over him an effort was made to swerve the truck to the left so as to pass between the patrolman and the two trucks on the left, but in so doing the plaintiff's truck sideswiped the gasoline truck, then caromed out of control to the right and came to rest about 65 yards father down the road in the ditch. The plaintiff's truck, as a result of the collision, was completely demolished, and its regular driver, Thackston, and the assistant driver, West, were pinned beneath the wreckage. They were extricated by Bice, the driver of the gasoline truck, and the three men came back to the scene of the collision to look for the patrolman, who they thought had been run over and killed. They found him coming across the ditch back to the highway, still inebriated, but luckily unscathed.

Within a short time Thackston obtained a ride on a passing truck to the Town of North, where he went into a service station for the purpose of telephoning for help. Thompson had also obtained a ride to North and was in the same station. Thompson asked him what he was telephoning about

and he replied that he was telephoning for the law, where-upon Thompson said, "I am the law."

It is alleged in the complaint:

"That the said collision and damages complained of were the direct and proximate result of the unlawful, negligent, willful, and wanton acts of the said highway patrolman, George Thompson, in the following particulars, to wit:

"(1) In carelessly, willfully, and unlawfully attempting to perform his official duties and acts while under the influence of intoxicating beverages.

"(2) In negligently, willfully, wantonly, unlawfully, and in abuse of his official duties, stopping three large trucks in the highway, forcing them to remain in said highway in such a manner as to block traffic on the left-hand side of the said highway.

"(3) In negligently, willfully, wantonly, and unlawfully walking on the plaintiff's right-hand side of the highway thereby completely blocking the highway to traffic in general and to plaintiff in particular and forcing plaintiff to leave his right-hand side of the said highway and collide with the trucks parked on the plaintiff's left-hand side of the highway."

The contention of the appellant is that there can be no recovery on the bond by the plaintiff because the negligence, if any, which brought about the injury was the individual negligence of Thompson, and not an act committed either by virtue of his office or under color of his office. It is urged that he was off duty, and that at the time of the accident he was merely seeking a ride in his individual capacity as would any other hitchhiker.

The bond sued on in this case is very much broader in its terms than the usual official bond of peace officers. It is conditioned, not only for the faithful performance of duty, and for the full, prompt, and proper accounting for all funds coming into the hands of the officer, but is also conditioned to pay any judgment recovered against him in any Court of

competent jurisdiction upon a cause of action arising out of breach or abuse of official duty or power, and damages sustained by any member of the public from any unlawful act of such officer.

We held in the recent case of *Yongue v. National Surety Corporation,* 190 S. C., 421, 3 S. E. (2d), 198, in dealing with the same type of bond involved in the case before us, that the unlawful act referred to in the bond must be an act committed by the officer either *virtute officii,* or *colore officii,* and not in his individual capacity. This is also in accordance with the weight of authority elsewhere. 22 R. C. L., Section 190, page 506; Annotation, 91 Am. St. Rep., 497, 46 C. J., Section 400, page 1069. It is often difficult to determine whether an act done by an officer is an official, or a mere private act. Acts of an officer which have no connection with the duties of his office are, of course, purely private acts, and no more official acts than the same acts would be if done by a person in a private station.

In this case we fully agree with the lower Court that if Thompson, the patrolman, was not acting by virtue of his office, he was certainly acting under color of his office, and the lower Court under the facts was warranted in so holding as a matter of law.

It is a matter of no importance that Thompson was off duty; this did not strip him of his office. His official status continued and could be exercised and brought into play whenever the public need or his duty required it. If on this occasion, and the circumstances had warranted it, he had stopped the two trucks in question and had arrested the drivers for a violation of the traffic law, no one would be heard to question the legality of his act as an officer. His appearance in official uniform, with all the accoutrements and insignia of his office, on the public highway, carried the full assurance to the traveling public that he was in the discharge of his duties, and that he was what his uniform and badge represented him to be.

Those who use the public highways, whether by day or night, are in duty bound to obey the law of the road and to respect the orders and directions of officers who represent and enforce that law. All recognize that it is vitally important that such respect and obedience on the part of the public should be maintained, and not undermined, weakened or destroyed. Thompson said nothing to any of the drivers of the trucks he stopped which in any manner disabused their minds of the belief that he was a highway patrolman in the actual discharge of his duty. That he was acting in the guise of his office we think cannot be doubted. When he told the driver of the gas truck, "Well, go ahead," he was speaking in the manner of an officer. When he said, "I told him to go ahead," he spoke with the voice of authority, supported by the prestige and power of his office. And it is worthy of note that the driver did not proceed on his way until he received his permission. When he later said, "I am the law," he clearly characterized his acts as having been done under color of his office.

Thompson was on the public highway, in his own bailiwick, where the law charged and enjoined that his duties be performed, and where the public would expect to find him. The law, Section 6005, 1932 Code, directs that patrolmen shall "at all times, when in the performance of their duties, wear a complete uniform, with a badge conspicuously displayed on the outside of the uniform, and they shall remain on the highways or roads at all times while in the performance of their duties * * * ." Thompson's official status enabled him to accomplish his wrongful acts and abuse his official power. It may safely be assumed that had he under such circumstances conducted himself as a private citizen he would have been ignored.

Sureties would not be needed on a patrolman's bond if they are to be held only when the acts are legal; they vouch for his acts and bind themselves to make good any damages he may cause to any member of the public by a breach or

abuse of his official duty or power, or from any unlawful act while acting under color of his office or by virtue of his office. No other rule would be safe or sensible. In our opinion, Thompson's acts clearly come within any accepted definition of the term, color of office. They show conclusively a breach of the condition of the bond.

We now turn to the second branch of the inquiry, whether the driver of plaintiff's truck was guilty of contributory negligence as he came down the hill and approached the other two trucks which had been stopped on his left-hand side of the road. It is urged that the lower Court should have so held as a matter of law. It is unnecessary to make any further review of the evidence for the purpose of showing that this issue, as was held by the trial Court, was one for the consideration of the jury.

We might add, however, that there was testimony which tended to show that the plaintiff's truck was not exceeding a speed of 35 miles per hour when it approached the point where the accident occurred; that the driver of the truck took his foot off the gas accelerator and slowed down; that seeing ample room upon the right-hand side of the road to pass the trucks parked on the left, no effort was made to stop the truck until the highway patrolman suddenly appeared directly in the path of the truck and attempted to wave it down with his flashlight. Mr. Bice stated that the plaintiff's truck was about twenty-five feet from the patrolman when he stepped into its pathway. Mr. Thackston testified that no brakes were applied because the time was too short to make them effective. It is undisputed that the plaintiff's truck was in good mechanical condition, having been inspected by a qualified mechanic before starting out on this trip, and that both the regular driver, Thackston, and the assistant driver, West, were sober.

The third and final issue presented is that the damages awarded were excessive. We do not think that the lower Court abused its discretion in overruling

the motion for a new trial on this ground. The testimony for the plaintiff tended to show that the list price of the truck when new was $990.00; that the plaintiff after purchasing it had it equipped with oversize tires and with airbrakes, at an additional cost of $115.00, thus representing an investment of $1,105.00. The truck was purchased in the year 1939, about a year before the accident, and had been driven about 30,000 miles. The testimony further showed that the truck had been maintained in excellent condition. Its salvage value after the wreck was only $75.00. The plaintiff testified that at the time of the accident the truck was worth $1,000.00.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and MR. ACTING ASSOCIATE JUSTICE G. DUNCAN BELLINGER concur.