16119

WHITMIRE *ET AL.* v. CASS, MAYOR, *ET AL.*

(49 S. E. (2d) 1)

*Mr. C. S. Bowen,* of Greenville, for Appellants,

*Messrs. A. C. Mann, C. M. Gaffney, Jr.,* and *Eugene Bryant,* all of Greenville, for Respondents,

*Mr. C. S. Bowen,* of Greenville, for Appellants, in reply,

August 5, 1948.

FISHBURNE, J.: The appeal in this case questions the regularity and validity of an election whereby the corporate

limits of the city of Greenville were extended by the annexation of an adjoining area to the North, known as Northgate. The appellants suing for the benefit of themselves and all others in like situation, seek the reversal of a decree of the circuit court of Greenville County which held the election to be valid.

Pursuant to a write of certiorari, the respondents, the mayor and aldermen of the city of Greenville, filed with the county clerk all records and documents in their possession relating to the annexation election. In passing upon the issues presented, the resident circuit judge who heard the cause at chambers, had these records before him, together with certain oral testimony offered by appellants. It is now sought by the appellants to have the election declared null and void, and to obtain an injunction against the respondents, enjoining them from exercising any authority or jurisdiction over the territory of Northgate, and over the people therein.

The election in question was ordered after the receipt by the respondents of a petition therefor, containing the signatures of a majority of the freeholders of the Northgate area, as required by Code Section 7230. This petition was considered at a regular meeting of the city council of Greenville on December 9, 1947, and by due resolution the election was ordered to be held on December 30, 1947. The election was directed to be held on this date in accordance with the request contained in the petition signed by the freeholders, in order that:

"(a)  The area might be annexed to the city at the beginning of a calendar year, as the city of Greenville operates on the calendar year basis.

"(b)  The necessity for prorating taxes, licenses, and other items of expense for 1948 would be made unnecessary.

"(c)  So that the appropriation bill and other financial arrangements might be made by the Greenville city council at the beginning of the fiscal year.

"(d) So that there might be no question as to the qualifications of the electors residing in the city and in the Northgate Area with reference to the validity of county registration certificates issued subsequent to January 1, 1938."

At the session of the city council held on the evening of December 30, 1947, the annexation election returns were duly canvassed. In the city of Greenville the vote was 127 for annexation and one against, and in Northgate the vote was 139 for annexation and 57 against. Therefore, the election was declared carried in favor of the annexation, and a resolution was offered and unanimously adopted annexing the Northgate area to the city of Greenville.

Appellants vigorously attack the validity of the election upon two grounds which charge non-compliance with essential constitutional and statutory requirements. The first issue raised involves the construction and application of Article VIII, Section 2 of the Constitution; and by the second it is maintained that no opportunity was given to the electors to rgister for the election between the calling of the election and the holding thereof.

We shall first consider the issue relating to the alleged failure to comply with the constitutional provision (Art. VIII, Sec. 2). This section provides as follows:

"No city or town shall be organized without the consent of the majority of the electors residing and entitled by law to vote within the district proposed to be incorporated; such consent to be ascertained in the manner and under such regulations as may be prescribed by law."

The complaint alleges that in the Northgate area "there were approximately 400 persons over the age of 21 years, residents of said area for over two years, and likewise residents for the same period or longer of Greenville County and of the state of South Carolina, and of the voting precinct therein, with all 1946 Greenville County poll tax either paid or exempted by law therefrom, and duly registered with the

Greenville County Board of Registration in 1938 or at some time since that date, but on or prior to the first week of November, 1947, and otherwise qualified to vote in said election. And in the city of Greenville there were approximately 3000 persons with like qualifications, further qualified with recent, good and valid city of Greenville registration certificates—being registered with said city—and with all past due city taxes paid, and in every other way qualified to vote in the said city in said election."

It is argued that the constitutional provision above quoted applies to an annexation election, and consequently such election could not be carried or declared to be in favor of annexation unless a majority of all the electors in the city and in the proposed annexation area voted therefor. In support of this contention, appellants rely upon the case of *Paris Mountain Water Co. v. City of Greenville,* 110 S. C. 36, 96 S. E. 545, 549, wherein it is said: "We find no provision in the Constitution which prescribes that a majority of all the electors, those voting and those not voting, shall be necessary to carry an election by the people save in one instance, and that refers to an election to determine if a town shall be incorporated. Article 8, § 2."

Should the quoted provision of the Constitution be held applicable and controlling here, then it would necessarily follow that the annexation election failed to carry, because it is evident, taking the allegations of the complaint to be true, that a majority of all the qualified electors in the city of Greenville and in the Northgate territory, those voting and those not voting, did not vote for annexation. On the other hand it is clear that if we consider only the votes cast by the qualified electors who voted, then the election was decisively carried for annexation by a majority of those voting.

We agree with the position taken by the respondents that the constitutional provision invoked has no application here. This section of the Constitution by its own specific language, relates to the original organization or

incorporation of a municipality. As will be observed, the word "organied," used in the Constitution, is deemed to be synonymous with the word "incorporated," which appears in the excerpt we have quoted from the case of *Paris Mountain Water Co. v. City of Greenville, supra.* The word "organize" in some of its forms is frequently used in the Constitution and laws of the state, and as so used has no doubtful or ambiguous meaning. To organize a certain territory into a municipal corporation is a very different thing from that of extending the limits of an incorporated city over new territory. It is manifest that an original incorporation is governed by the constitutional provision, and that subsequent annexations of adjoining areas to an organized city or town are not mentioned nor contemplated in Art. VIII, Sec. 2.

There are cogent reasons which impel the foregoing conclusion. By such annexation, the corporate existence and municipal autonomy of the city of Greenville remained unchanged. The annexation merely resulted in an increased area which merged into that of the city. The merger effected no new corporate entity, and the new territory when duly annexed, pursuant to law, automatically came under the control and jurisdiction of the city of Greenville for political and governmental purposes. There was no new organization or incorporation as designed by the constitutional provision.

The city of Greenville is a duly chartered municipality and has all powers conferred by the general laws of the state, which include the general power to extend its limits by following prescribed statutory regulations. When annexation is effected and an adjoining area, great or small, is taken in, it in no way affects the name of the municipality to which it is joined. Nor is the annexation followed by the election of new municipal officers nor the passage or adoption of any new body of ordinances. The Constitution makes no reference to the enlargement of boundaries by annexation. This is provided for by legislative enactment in Section 7230 and 7231 of the Code. And these two sections (Section 7230 being

applicable) provide the procedure for extension of the limits of an existing organized municipality. Section 7230 reads as follows:

"How the corporate limits of cities and towns may be extended.—Any town or city council shall have power to extend the corporate limits of said city or town in the following manner: a petition shall first be submitted to said council by a majority of the freeholders of the territory which it is proposed to annex praying that an election be ordered to see if such territory shall be included in said town. The said town council shall order an election after not less than ten days' public advertisement. At such election the qualified voters of the municipality shall vote at the usual voting precincts thereof in a box provided for that purpose, and the qualified electors of the territory proposed to be annexed shall vote in a separate box to be provided for that purpose within the territory proposed to be annexed. If a majority of the votes cast by the qualified electors of the town and of the territory proposed to be annexed, each aggregated separately, shall be each in favor of annexation, or if neither give a majority against annexation, then council shall publish the result of said election and declare the annexed territory a part of said town: provided, however, that if the property sought to be annexed belongs to a corporation only, it may be annexed on the petition of the stockholders of said corporation. Any town increasing its territory shall file a notice with the secretary of state describing its new boundaries."

It is set forth in the foregoing section that if a majority of the votes cast by the qualified electors of a city and of the territory to be annexed, each aggregated separately, shall be in favor of annexation, then the council shall publish the result of said election and declare the annexed territory a part of the city. So far as the record discloses, the city council of Greenville scrupulously complied with the foregoing statutory requirements, and in our opinion the action of the city in declaring the result of the election in favor of annexa-

tion, upon a majority of the votes cast, was in accordance with law, regular and valid.

The consolidation by annexation of contiguous urban areas under one municipal government has been encouraged by legislative enactment of Sections 7230 and 7231 as a public policy. This policy with respect to municipal government is further exemplified by statutes providing for various classifications of cities and towns in accordance with population. For instance, Section 7445 through 7449 relate to towns between 1,000 and 5,000 population. Section 7450 gives municipalities of 1,000 and less than 5,000, already chartered, the right by election to organize under the general laws of the state. And Section 7451 confers on all municipal corporations with a population of not less than one thousand and not more than ten thousand the same rights as those conferred by the above sections. Along the same line, see Sections 7453, 7454, and 7465. Also an Act, approved by the governor April 14, 1948, amending Section 7230 of the Code of Laws of 1942, so as to further provide for the extension of corporate limits of municipalities in this state.

As hereinabove stated, it is our opinion that Article VIII, Section 2, has no application to an annexation election. Such annexation is governed by Code Section 7230.

It is next contended by appellants that the county registration books were not opened for the registration of voters in the Northgate area, and closed thirty days or more prior to the election. That, as alleged in the complaint, there were approximately two hundred people in the Northgate territory fully qualified to vote by reason of residence, age and payment of poll taxes, except that they lacked registration with the Greenville County Board of Registration. It is charged, therefore, that they were disfranchised by reason of having been given no opportunity to register for the election.

On this phase of the case, appellants call particular attention to Article II, Section 11 of the Constitution, which pro-

vides that "the registration books shall close at least thirty days before an election, during which time transfers and registration shall not be legal: Provided, Persons who will become of age during that period shall be entitled to registration before the books are closed."

Attention is also directed to Code Section 2272, which regulates the opening and closing of the county registration books. It is therein provided that the county supervisors of registration in any year in which any special election is to be held, subsequent to the first day of September, shall hold in each and every town, city or industrial community containing 300 inhabitants or more, at such time as may be designated by the Board, after two weeks notice published or posted in any such town or city, one meeting, at which shall be registered such qualified electors of the county as may present themselves. It is further provided that the books of registration shall also be opened on the first Monday of each month at the court house for the registration of electors entitled to registration under the Constitution, and shall be kept open for three successive days in each and every month until thirty days before a general election, when they shall be closed until the general election shall have taken place. The registration books shall be in like manner closed thirty days before any special election. .

The election held in this case was a special election: The Code section under which it was held (Section 7230) provides for no special registration, *Hunter v. Senn*, 61 S. C. 44, 39 S. E. 235; and there is no evidence in this record in any way tending to show that the county supervisors of registration failed to comply with the foregoing provisions of Section 2272. It is suggested in appellant's brief that the supervisors failed to hold one meeting after two weeks' published notice in the *industrial community* of Northgate, which contains more than 300 inhabitants. There is no allegation or proof that Northgate is an industrial community; nor, even assuming that it is an industrial community and not

a residential community, is there any evidence tending to prove that the one meeting of the supervisors in that community was not duly held.

Appellants offer no testimony with respect to any alleged failure of the supervisors of registration of Greenville County to open the books of registration on the first Monday of each month at the court house, and for three successive days in each and every month until thirty days before the special annexation election. See *Gunter v. Gayden,* 84 S. C. 48, 65 S. E. 948.

As heretofore stated, the Code section under which this election was held (Section 7230), requires no special registration. In the absence of any proof to the contrary, there is a presumption that public officers have properly discharged the duties of their office and have faithfully performed those duties with which they are charged. *Howell v. Littlefield,* 211 S. C. 462, 46 S. E. (2d) 47; 43 Am. Jur., Sec. 511, Page 254.

Appellants query, how could the books be closed thirty days before the election on December 30, 1947, for that election, as required by the Constitutional and statutory provisions, when it was not called or ordered until December 9, 1947? It is said that to be capable of being closed they must have been opened. We repeat that no special registration was required. The general registration applied, and it may legally be presumed that so far as the annexation election was concerned, the books closed for this election after their three day opening in November, 1947. *Gunter v. Gayden, supra.* There is no suggestion that anyone attempted to vote who might have registered when the county registration books were open the first Monday and the three successive days, in December, 1947. Nor is there the slightest intimation of fraud or other alleged irregularity in the proceedings relating to registration. To all intents and purposes, the books were closed as above stated after their opening in November, 1947. And it appears from the com-

plaint that at the time of the election, on December 30, 1947, there were approximately 400 duly qualified registered electors in the Northgate area who could have voted if they had been so disposed.

If the voter is given a reasonable opportunity to register, as was done here, he is not in a position to complain that any of his constitutional or statutory rights have been violated. That the right of registration was exercised in this case by numerous residents of the Northgate area is fully shown. Those who failed to register must ascribe such failure to their own negligence.

Judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, J. J., concur.