20011

Joyce B. MORRIS, as Administratrix of the Estate of Jimbo Buck Morris, Respondent, v. SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Appellant.

(215 S. E. (2d) 430)

370

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *John L. Choate, Staff Atty.,* of Columbia, and *G. Dana Sinkler* of *Sinkler, Gibbs, Simons & Guerard,* Charleston, *for Appellant,*

*Messrs. Paul N. Uricchio, III,* and *O. Grady Query,* of *Uricchio, Howe & Krell,* Charleston, *for Respondent,*

May 13, 1975.

LITTLEJOHN, Justice:

This action was initiated by the respondent, Joyce B. Morris, as administratrix of the estate of Jimbo Buck Morris, deceased, on behalf of the statutory beneficiaries of Jimbo Buck Morris under the provisions of the Wrongful Death Statute, § 10-1951 *et seq.,* Code of Laws of South Carolina, 1962. The complaint alleges a cause of action pursuant to the Governmental Motor Vehicle Tort Claims Act, Code § 10-2621 *et seq.* It alleges that the deceased was killed by reason of the negligent operation of a state highway patrol motor vehicle driven by a state highway patrolman.

The South Carolina State Highway Department, appellant, in its answer denied liability, asserting, *inter alia,* that the patrolman was not on duty when the accident occurred and therefore was not on "official business" of the department within the meaning of Code § 10-2623.

The jury returned a verdict for the respondent in the amount of $6,000.00. At appropriate stages of the trial,

counsel for the appellant moved for a directed verdict and for judgment notwithstanding the verdict, on the ground that there was no evidence before the court warranting the conclusion that the patrolman was in and about the official business of the Highway Department at the time of the accident. The motions were overruled. The Department has appealed, submitting two questions to this Court. In our view, a ruling on the first question is dispositive of the entire appeal. That issue, as copied from the respondent's brief, is as follows:

"Was there any competent evidence from which the jury could infer that the operator of defendant's State Highway Patrol vehicle was in and about the official business of the State Highway Department within the meaning of § 10-2623, of the Code of Laws of South Carolina for 1962, as amended?"

Under the doctrine of sovereign immunity a state may not be sued in tort except as permitted by the legislature. The legislature has granted that authority under Code § 10-2623 in verbiage as follows:

"Any person sustaining an injury by reason of the negligent operation of any motor vehicle while being operated by an employee of a governmental entity *while in and about the official business of such governmental entity* may recover in an action against such governmental entity such actual damages as he may sustain; . . ." (emphasis added.)

The facts out of which this action arises are not greatly if at all, in dispute. Ernest H. Lilienthal is a highway patrolman stationed for duty at Beaufort, South Carolina. On Sunday, May 21, 1972, he was off duty and drove, with his wife in his marked patrol car to Charleston for the purpose of visiting with his relatives. He had permission of his superiors to use the vehicle for such a purpose, and he was not to be on duty again in Beaufort until Midnight of Monday. About 8:30 p. m., Monday, May 22, he was returning from Charleston to Beaufort, along with his wife,

on highway number 17 when the accident occurred. He was in uniform, but testified that he was at the time performing no official function for the State Highway Department. After the accident occurred, the patrolman turned on his blue light and radioed for assistance.

We are called upon to determine the narrow question: Was the patrolman "in and about the official business" of the State Highway Department at the time of the accident and ensuing death? When this Court has been called upon to interpret statutes waiving the State's immunity from suit, we have consistently held that while the legislative intent is not to be defeated, the statute must be strictly construed. *Jeff Hunt Machinery Co. v. South Carolina State Highway Dept.*, 217 S. C. 423, 60 S. E. (2d) 859 (1950); *Rushton v. South Carolina State Highway Dept.*, 207 S. C. 112, 34 S. E. (2d) 484 (1945).

This Court has never been called upon heretofore to interpret the meaning of "official business" as it relates to the Tort Claims Act. We have in many cases ruled upon kindred issues in Workmen's Compensation cases. In those cases the Act is given a liberal construction in an effort to protect workmen. The cases relied upon by the respondent are not particularly helpful in determining the issue now before the Court. In the Workmen's Compensation cases the issue normally is: "Did the injury of the claimant arise out of and in the course of the employment?" In those cases the issue simply is not the same. The rule of construction is also different.

We have consistently held that it is the duty of the court to construe the Acts waiving sovereign immunity so as to uphold the power of the State to refuse to be sued by a citizen in its own court, except in those instances where the State has expressly consented to be sued. It is the burden of one seeking to sue the State to show that the State has given the necessary consent. We keep in mind the fact that inasmuch as the right to sue is

purely statutory, the legislature has the power not only to restrict such right but to withhold it, or withdraw it altogether.

In waiving sovereign immunity by the statute quoted, we think that the legislature has recognized the fact that motor vehicles owned by governmental entities would be driven other than on official business. It is apparent that the legislature did not intend to extend the waiver to such operation. On the other hand, it has limited the waiver to operations involving the official business of the governmental entity. We are not at liberty to extend the right to sue beyond the waiver.

Argument of counsel that a patrolman has the right to arrest at any time, and argument that the very presence of a marked patrol car on the highway has a good influence upon the riding habits of motorists, and further argument that a patrolman might be of some service in case of an emergency such as a wreck between other vehicles are impressive. However, we do not think that such possible remote benefit to the department and to the government is sufficient to warrant a finding that the patrolman, under the facts of this case, was "in and about the official business" of a governmental entity.

We conclude that the trial judge should have either granted the directed verdict, or the motion for judgment notwithstanding the verdict and, accordingly, the judgment of the lower court is

Reversed.

Moss, C. J., and Lewis, J., concur.

Bussey and Ness, JJ., dissent.

Bussey, Justice (dissenting) :

This case does not involve, I think, any complex issue of statutory construction, strict or otherwise. Under the settled law of this State governmental entities have no business except "official business" and therefore the statu-

tory phrase "while in and about the official business of such governmental entity" merely imposes the requirement that the employee be about the business of the employer. If such language had been omitted I think the meaning and effect thereof would have to be implied.

The purpose of code section 10-2623 is to put governmental entities, subject to certain statutory limitations, in the same position as such would have occupied if private employers. By waiving sovereign immunity the state did not waive its other substantive defenses. See 81 C. J. S., States, § 220(b); West's Decennial Digest, Key No. 198. Part of the body of substantive law is the doctrine of *respondeat superior,* and the requirement quoted from section 10-2623 does nothing more than limit liability to cases where the governmental entity, as employer or master, would be liable for the acts of the servant under the doctrine of *respondeat superior,* the same as if such governmental entity were a private employer.

It is elementary that in considering whether there was any competent evidence from which it could be reasonably inferred that the patrolman was in and about the business of his master at the time of the fatal accident, the entire evidence and all the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff-respondent. We proceed to state the evidence and the inferences therefrom in the light of that principle.

The patrolman was in uniform and was operating a marked Highway Patrol vehicle owned by the South Carolina Highway Department, on one of the principal highways of the state. He had his patrol radio on to keep him in contact with the tower and he turned on his blue light after the accident and death of the plaintiff-respondent. He used his radio to call in for assistance.

He admittedly was driving the partol vehicle with the full knowledge and consent of his superiors and customarily did so whether its use was private, official or both. All gaso-

line and maintenance of the vehicle were furnished by the department. It is admitted that the patrolman was empowered to make an arrest at any time and that his mere presence on the highway in uniform and in a patrol vehicle served to promote safer driving by other motorists whether or not the patrolman was, at the moment, on a specified duty assignment. Under code section 46-854 it is the duty of patrolmen to patrol the highways of the state for the purpose of enforcing the laws of the state relative to highway traffic and motor vehicles. From the practice of the Highway Department of allowing patrolmen to use without limitations the patrol cars assigned to them, for private purposes, at no cost whatever to the patrolmen for either fuel or maintenance, it is readily inferable that the department encourages the practice of patrolmen operating marked motor patrol vehicles, whether on or off of a duty assignment, for the purpose of creating an appearance of a large number of officers patrolling the highways to further the purpose of controlling traffic and promoting safety.

From the foregoing I conclude that the jury could reasonably infer that at the time of the accident the patrolman was in and about the business of his employer, the Highway Department, despite his testimony that he was on a personal mission and not expected to return to assigned duty until several hours later.

It might not be amiss to point out that the jury was not required to believe the testimony of the patrolman to the effect that he was on a strictly personal mission at the time, but even if it be assumed that a predominant motive of the patrolman in making the trip was a personal one, such is not at all conclusive of the matter. I quote the following from *Davis v. Littlefield*, 97 S. C. 171, 81 S. E. 487, 488:

"When a master sends his servant to town on the master's business, we know of no court that has held that, if the servant is induced to go mainly because he wants to make purchases for himself, the private purpose of the ser-

vant will relieve the master from liability for the negligence of his servant in the conduct of the master's business."

In *Carroll v. Beard-Laney, Inc.*, 207 S. C. 339, 35 S. E. (2d) 425, the court pointed out that it was a tribute to the author of the opinion in *Davis* that the principle enunciated there had been adopted by the American Law Institute as a part of its Restatement of the Law of Agency, Volume 1, Pages 530, 531 (2d Edition, Page 523) where the rule is stated as follows:

"The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service, * * *."

The case of *League v. National Surety Corporation*, 198 S. C. 289, 17 S. E. (2d) 783 was concerned with liability under the official bond of a highway patrolman and accordingly not legally precisely in point with the instant case. The language of the opinion, however, is graphically depictive of the status of the patrolman in the instant case and strongly persuasive of the fact that the evidence here quite sufficiently forms the basis of a reasonable inference that the patrolman was in fact in and about the business of his employer at the time of the fatal accident. We quote therefrom as follows:

"It is a matter of no importance that Thompson was off duty; this did not strip him of his office. His official status continued and could be exercised and brought into play whenever the public need or his duty required it. If on this occasion, and the circumstances had warranted it, he had stopped the two trucks in question and had arrested the drivers for a violation of the traffic law, no one would be heard to question the legality of his act as an officer. His appearance in official uniform, with all the accoutrements and insignia of his office, on the public highway, carried the

full assurance to the traveling public that he was in the discharge of his duties, and that he was what his uniform and badge represented him to be.

\* \* \*

"Thompson was on the public highway, in his own bailiwick, where the law charged and enjoined that his duties be performed, and where the public would expect to find him.

The law, Section 6005, 1932 Code, directs that patrolmen shall 'at all times, when in the performance of their duties, wear a complete uniform, with a badge conspicuously displayed on the outside of the uniform, and they shall remain on the highways or roads at all times while in the performance of their duties \* \* \*'."

Ness, Justice (dissenting) :

Being unable to agree with the reasoning of the majority, I respectfully dissent. Mr. Justice Bussey's dissenting opinion is generally impelling, but I disagree with his construction of *League v. National Surety Corporation,* 198 S. C. 289, 17 S. E. (2d) 783. The instant case, unlike *League,* is factually unrelated to the officer's "accoutrements and insignia of office." My dissent springs from the majority's failure to give substantial weight to the salutary effect of off-duty use of highway patrol vehicles and their characterization of the Department's derivation of benefits therefrom as "remote".

The majority quite correctly stated the general principle that under existing case law any statutory waiver of sovereign immunity is to be strictly construed. Accordingly, in the instant case, waiver would result only when the operator of the State owned vehicle was "in and about the official business of such governmental entity."

For purposes of this appeal the official duty or business of the State Highway Department is the utilization of its personnel and equipment as it "may deem necessarily proper for the enforcement of the traffic and other related laws." S. C. Code of Laws, § 46-851 (1962). Pursuant to this

statutory authority, the Highway Department has, for a long standing period of time, permitted patrolmen to use patrol vehicles during so called "non duty" hours. Anyone who has driven on state highways over the past fifteen years has observed this practice. Since it is a matter of common knowledge that the Highway Commission has adopted this policy, this Court may take judicial notice of same. See, *Deese v. Williams*, 236 S. C. 292, 113 S. E. (2d) 823 (1960); *Sylvan v. Sylvan Bros., Inc.*, 225 S. C. 429, 82 S. E. (2d) 794 (1954); *Pitts v. Brown*, 215 S. C. 122, 54 S. E. (2d) 538 (1949); *Green v. City of Bennettsville*, 197 S. C. 313, 15 S. E. (2d) 334 (1941); *Holliday v. The Great Atlantic & Pacific Tea Co.*, 314 F. (2d) 682 (4th Cir. 1963).*

When a duly authorized state commission adopts a policy, such act is presumed to be in furtherance of the faithful discharge of its duty. *South Carolina National Bank v. Florence Sporting Goods, Inc.*, 241 S. C. 110, 127 S. E. (2d) 199 (1962); *Whitmire v. Cass*, 213 S. C. 230, 49 S. E. (2d) 1 (1948). There was no testimony adduced at trial that the above policy was not calculated to demonstrably assist in the enforcement of the traffic laws of this State. Indeed, the majority opinion observed that the obvious benefits conferred upon the Department's discharge of its duties are "impressive" and aid in attaining the statutory objective of safe highway travel.

The majority opinion has taken liberty with the facts in this case and stated them in a light most favorable to the Department. They have constrictively interpreted the Government Motor Vehicle Tort Claims Act, [Sections 10-2621 *et seq.*] and in so doing, they have frustrated the clear intendment of said Act as Justice Bussey cogently reasons in his dissenting opinion.

---

* Since the trial judge charged that the patrolman was conducting the business of the Department only if said activity was within the scope of his duty, it is apparent that the jury was well aware of the policy of the Department of which I take judicial notice.

This Court's reluctance to yoke the Tort Claims Act with rigid constructions ill calculated to further the purposes of the Act was clearly demonstrated in *Truesdale v. S. C. Highway Department,* Smith's Advance Sheets, April 16, 1975.

"It is true that the decisions of this Court have uniformly stated, if not held, that statutes waiving the State's immunity from suit, being in derogation of sovereignty, must be strictly construed. The Court has been just as consistent, however, in pointing out that this is only one rule of construction and that it is subservient to the cardinal rule of construction that the legislative intent must prevail if it can be reasonably discovered in the language used, which must be construed in the light of the intended purpose. Stated differently, this rule of strict construction is subject to the principle that all rules of statutory construction are merely for the purpose of ascertaining the legislative intent as expressed in the statute. Accordingly, a statute in derogation of sovereignty is never to be so strictly construed as to defeat the legislative intent. The act, as a whole, must receive a practical, reasonable and fair interpretation consonant with the purpose, design and policies of the law makers and must be construed in the light of the evil which it seeks to remedy and in the light of conditions pertaining at the time of its enactment."

It is a matter of common knowledge that the Highway Commission has adopted policies which seek maximum presence of patrol cars on the highway. It is obvious that policy is reasonably calculated to achieve the end of promotion of vehicular safety. It is uncontroverted here that the patrolman was operating his patrol car pursuant to the above policy and was not unlawfully operating the vehicle or operating it without due authorization. The patrolman was in uniform and authorized to make arrests. I think, as a matter of law, the patrolman was "in and about the official business" of the Highway Department or at the very least, the issue was properly submitted to the jury whose

resolution of same against the Department finds abundant support in the record. The other ground asserted by the Department is patently without merit and accordingly, I would affirm.