2444

The STATE, Respondent v. Patrick PEER and Gerald Matthews, Appellants.

(466 S.E. (2d) 375)

Court of Appeals

548

*Suzanne E. Coe,* of *Law Office of Suzanne E. Coe,* Greenville, *for appellants.*

*Assistant Solicitor James F. Brehm,* Greenville, *for respondent.*

Heard Dec. 5, 1995.

Decided Jan. 22, 1996.

*Per Curiam:*

The appellants, Patrick Peer and Gerald Matthews, own and operate the Infinity Club, a nonalcoholic dance club for teenagers. Both Peer and Matthews were convicted in Magistrate's Court of two counts of the common-law crime of breach of the peace, and both fined $279.25 on each count. These charges arose after the Greenville County Sheriff's Office received numerous complaints about the noise and bass vibrations emanating from the Club. On appeal to the circuit court, the convictions of both appellants were affirmed. On appeal to this court, the appellants contend: (1) the magistrate erred in failing to direct a verdict on their behalf because the State presented no evidence of any incitation to violence, an essential element of breach of peace; (2) the magistrate's jury charge concerning breach of peace was inaccurate; (3) the magistrate erred in refusing to charge the noise ordinance of Greenville County; and (4) the magistrate erred in qualifying a Greenville police officer as an "expert" in sound because he had no formal training regarding noise vibrations. We affirm.

The Infinity Club is lcoated on Wade Hampton Boulevard in Greenville County and fronts the Laurel Hills community, a subdivision with numerous residents. The Club's main selling point is its thirty-five thousand dollar bass sound system. "COME HEAR THE BOOM, BOOM, BOOM!!!" and *"WE GIVE A NEW DIMENSION TO SOUND* INFINITY SIMULATES *EARTHQUAKES"* are the Club's slogans. On a typical weekend, the Club draws over fourteen hundred teenagers, with an assemblage of close to seven or eight hun-

dred kids each Friday and Saturday night. Although the building which houses the Club is a "metal structured" building, one of the owners testified "[w]e didn't feel it was necessary" to soundproof the building.

However, the residents of the Laurel Hill community vehemently disagreed because from the moment the Infinity Club opened and the music was turned on, the bass resonated throughout the community. Residents found their walls, doors, and windows rattled, and pictures fell out of their frames. As one frustrated resident described for the jury, "its almost like the intensity of it just roars in your head and vibrates your body. You can't get rid of it. Even when you get away from it, it still haunts you." Other residents testified they were unable to sleep, work, or even watch television because the noise and bass vibrations lasted from "five o'clock in the afternoon until two o'clock in the morning or even afterwards." They also complained of headaches and nervousness.

Four Greenville County Deputies testified about the numerous complaints from residents. Sometimes when they responded to these complaints by going to the Club, the appellants would turn the volume of the music down, but soon after law enforcement left, the music would be turned back up. On one occasion, the Sheriff's Office received ten complaints from Laurel Hills residents. According to Deputy Gardner, appellant Peer seemed defiant from the outset claiming that "[n]obody was gonna tell him how to run his business." At trial Peer admitting making this statement and also stating to Gardner that the Infinity Club was "in a commercial zone property and the Supreme Court says that [neighboring residents] must go to [sic] some inconvenience."

## I.

On appeal, the appellants claim the trial court should have directed a verdict in their favor because no evidence of any incitation to violence was presented by the State, an essential element required to establish breach of peace. The State retorts that it was not required to put forth witnesses who would specifically testify that the noise "caused me to become violent or think about becoming violent." In order to establish breach of peace. Rather, the State contends it met its burden by proving that the acts or conduct of the appealants was such

that it caused numerous residents of an otherwise peaceful community to repeatedly call law enforcement to help them restore the peacefulness of their community so they can sleep, work, watch television, or simply concentrate without being subjected to the "very disturbing, nerve racking" sound of "booming" music and bass vibrations. Inferentially, the State argues, the repeated complaints to police and the residents' zeal to rid themselves of the situation created by the Club demonstates that the conduct.of the appellants directly tended to disturb the public peace and quiet and could be expected to incite retaliation or violence. We conclude that the State met its burden of proof and the magistrate properly sent the case to the jury.

It is well settled that a jury verdict must be affirmed if there is any competent evidence to sustain it, and, in determining such question, the evidence and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the State. *State v. Schrock*, 283 S.C. 129, 322 S.E. (2d) 450 (1984); *Townes Assoc., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976). We are not at liberty to pass upon the veracity of the witnesses or the weight of the evidence. Our role is simply to determine whether there was sufficient evidence to warrant submission of the case to the jury. *State v. Prince*, 316 S.C. 57, 447 S.E. (2d) 177 (1993).

Moreover, in ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Bryant*, 316 S.C. 216, 447 S.E. ((2d) 852 (1994); *State v. Morgan*, 282 S.C. 409, 319 S.E. (2d) 335 (1984). The motion should be granted if the evidence merely raises a suspicion of the defendant's guilt, or is such to permit the jury to merely conjecture or speculate as to the accused's guilt. *State v. Brown*, 267 S.C. 311, 227 S.E. (2d) 674 (1976); *State v. Barksdale*, 311 S.C. 210, 428 S.E. (2d) 498 (Ct. App. 1993). However, if the state presents any substantial evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the defendant or from which the defendant's guilt may be fairly and logically deduced, the case must go to the jury. *Prince*, 447 S.E. (2d) 177; *State v. Poindexter*, — S.C. —, 431 S.E. (2d) 254 (1993).

The term "breach of the peace" is a generic one embracing a great variety of conduct destroying or menacing public order and tranquility. *State v. Poinsett*, 250 S.C. 293, 157 S.E. (2d) 570 (1967). In general terms, it is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence. *Id.* at 297, 157 S.E. (2d) at 571; *see also State v. Randolph*, 239 S.C. 79, 121 S.E. (2d) 349 (1961). Although it includes acts likely to produce violence in others, actual violence is not an element of breach of peace. *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *State v. Brown*, 240 S.C. 357, 126 S.E. (2d) 1 (1962); *State v. Langston*, 195 S.C. 190, 11 S.E. (2d) 1 (1940); *Childers v. Judson Mills Store Co.*, 189 S.C. 224, 200 S.E. 770 (1939). *American Jurisprudence* further provides:

> Throughout the various definitions appearing in the cases there runs the proposition that a breach of the peace may bne generally defined as such a violation of the public order as amounts to a disturbance of the public tranquility, by act or conduct either directly having this effect, or by inciting or tending to incite such a disturbance of the public tranquility. Under this general definition, therefore, in laying the foundation for a prosecution for the offense of breach of the peace it is not necessary that the peace actually be broken; commission of an unlawful and unjustifiable act, tending with sufficient directness to breach the peace, is sufficient.
>
> \* \* \* \* \* \*
>
> The Word "peace" as used in the phrase "breach of the peace" means the tranquility enjoyed by members of a community where good order reigns.

12 Am. Jur. (2d) *Breach of Peace*, etc. § 4 (1964) (citations omitted); *accord, Lyda v. Cooper*, 169 S.C. 451, 169 S.E. 236 (1933).

Whether conduct constitutes a breach of the peace depends on the time, place, and nearness of other persons. The right of a person to use his own property does not entitle him to violate the peace and comfort of others in the vicinity. 3 S.C. Juris. *Breach of Peace* § 7 (1991).

Viewing the evidence in the light most favorable to the State and applying the foregoing princisples, there was ample evidence for submission of the case to the jury. The nervousness, anxiety, and frustration felt by residents of this community as a result of the unyielding noise and bass vibrations emanating from the Club coupled with the resolute and nonchalant attitude of the appellants presented a reasonably justifiable inference that the appellants breached the peace. Indeed, the appellants advertised the vibrations caused by its sound system as a central feature of its attraction.

## II.

The appellants next claim the trial court did not accurately charge the jury regarding the law of breach of peace. A thorough review of the record reveals that this argument is totally without merit. The trial court clearly charged the law of breach of peace, including the inciting violence language. Furthermore, the portion of the court's charge which the appellants specifically point to as error[1] has long been approved by our Supreme Court; in fact, the language used by the trial court was derived from South Carolina Supreme Court decisions. *See e.g., Langston,* 195 S.C. 190, 11 S.E. (2d) 1; *Brown,* 240 S.C. 357, 126 S.E. (2d) 1.

## III.

The appellants also maintain that the court erred in refusing to charge the noise ordinance of Greenville County. We disagree.

Ordinarily, the trial court has the duty to give requested instructions which correctly state the law applicable to the issues and which are supported by the evidence. *McCourt by and through McCourt v. Abernathy,* 318 S.C. 301, 457 S.E. (2d) 603 (1995); *Sherer v. James,* 286 S.C. 304, 334 S.E. (2d) 283 (Ct. App., 1985), *rev'd on other grounds,* 290 S.C. 404, 351 S.E. (2d) 148 (1986). It is not error to read to the jury a statute defining a crime with which the defendant is not charged, if the purpose is to enlighten the

---

[1] The appellants argue the court erred by stating . . . "it is not necessary that an act have in itself any element of violence in order to constitute a breach of peace. And whether or not an act constitutes a breach of peace depends on the time, the place and the nearness of other persons."

jury regarding the issues before it; however, a non-charged offense should not be charged to the jury if it has the effect of confusing the issues the jury must determine. *State v. Leonard*, 292 S.C. 133, 355 S.E. (2d) 270 (1987); *State v. Simmons*, 269 S.C. 649, 239 S.E. (2d) 656 (1977). In fact, it is error to give instructions which are calculated to confuse or mislead the jury. *Leonard*, 292 S.C. 133, 355 S.E. (2d) 270; *see also Wright v. Harris*, 228 S.C. 144, 89 S.E. (2d) 97 (1955) (the giving of conflicting and irrelevant instructions is reversible error). This is so because the purpose of jury instructions is to enlighten the jury as to what law is applicable to a certain state of facts in order that a just, fair and proper verdict can be reached. *Leonard*, 292 S.C. 133, 355 S.E. (2d) 270.

Here, the appellants were charged with common-law breach of peace. They were not charged with violating the county's noise ordiance. In fact, the county noise ordinance did not apply to the appellants because the Infinity Club did not serve alcohol. Thus, any charge concerning the noise ordinance would have been confusing or misleading to the jury. Additionally, the residents' principal complaint centered not so much on the noise level of the club's music, but rather on the vibrations emanating from its high-performance bass speakers.

## IV.

Lastly, the appellants claim the trial court erred in qualifying Deputy Gardner as an "expert" in sound, and in allowing him to testify concerning the noise ordinance. Particularly, the appellants contend Deputy Gardner lacked sufficient knowledge to be deemed a sound or noise expert. We disagree.

Deputy Gardner testified he worked for the Greenville County Sheriff's Office for about five and a half years. He stated he was trained by another officer who was certified in the use of sound meter equipment, and he demonstrated for the jury how a sound level meter works. He also testified that during the one and a half years that he had been conducting these tests, he handled probably ten cases.

The criteria for admitting the testimony of an expert is not whether the expert holds a degree in the specialty field he seeks to testify about, but whether he has such expertise in a business, profession, or science that he is better

qualified than the jury to form an opinion on the particular subject of his testimony. *Honea v. Prior,* 295 S.C. 526, 369 S.E. (2d) 846 (Ct. App. 1988); *Botehlo v. Bycura,* 282 S.C. 578, 586, 320 S.E. (2d) 59, 64 (Ct. App. 1984). Ordinarily, the decision whether to qualify an expert is discretionary with the trial court. *Gooding v. St. Francis Xavier Hospital,* 317 S.C. 320, 454 S.E. (2d) 328 (Ct. App. 1995), *cert. granted* (Nov. 3, 1995); *Campbell v. Paschal,* 290 S.C. 1, 347 S.E. (2d) 892 (Ct. App. 1986). Defects in the amount and quality of education and experience go to the weight of the expert's testimony and not to its admissibility. *Lee v. Suess,* 318 S.C. 283, 457 S.E. (2d) 344 (1995). In *Lee,* our Supreme Court held a plastic surgeon's interaction with family practice practitioners was a sufficient basis to support his qualification as an expert in the family practice field. *Lee* also reaffirmed our holding in *Gooding,* that the test for qualification is a relative one that is dependent on the particular witness's reference to the subject.

Pursuant to the foregoing principles, we conclude the trial judge properly exercised his discretion in qualifying Deputy Gardner as an expert in sound, and as such, his testimony concerning the noise ordinance was proper. Finally, even if the noise ordinance testimony was improperly admitted, we fail to see how the appellants were prejudiced by it. Gardner testified that at the time of the arrest, the club's sound level did not violate the county's noise ordinance.

Affirmed.

HOWELL, C.J., and CURETON and GOOLSBY, JJ., concur.