519 S.E.2d 786

**The STATE, Respondent,**

v.

**Eric Peter NELSON, Appellant.**

**No. 24984.**

Supreme Court of South Carolina.

Heard May 11, 1999.

Decided Aug. 9, 1999.

Rehearing Denied Sept. 9, 1999.

James L. Hills, of Myrtle Beach; and Robert T. Bockman, of McNair Law Firm, PA, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, all of Columbia; and Solicitor Ralph J. Wilson, of Conway, for respondent.

PER CURIAM:

In this criminal matter, Eric Nelson ("Defendant") was convicted by a jury for driving under the influence. Defendant appeals his conviction.

### FACTUAL/PROCEDURAL BACKGROUND

On April 17, 1996, Defendant was visiting a client in the Myrtle Beach area. Defendant testified that while he was speaking with his client outside of her house, his dog jumped

out of the back window of his Jeep Cherokee. Defendant's dog was a full bred Weimaraner. A neighbor, Jeffrey Soles, testified that Defendant's dog began running loose in his yard and garden. Soles asked Defendant if he would remove the dog from his yard. Soles further testified: "I don't know if he cussed me but his reaction on his face seemed like he did cuss me and didn't do anything about the dog." Defendant claimed that he did not "cuss" Soles, but did yell at his dog. Soles called the police.

Defendant eventually captured his dog and left the area. Officer Mark Hadden soon thereafter arrived at the scene in response to Soles' call about Defendant's dog. After briefly speaking with Soles, the officer left in his patrol car to go find Defendant. At trial, the officer provided the following explanation for going after Defendant:

I wanted to have—generally in a situation like this I like to have both sides of the story and have both people in front of me present. I like to talk to 'em and get both sides of the story. At that time I asked the complainant to stay there and I would go attempt to bring the driver of the white Jeep Cherokee back to this location where I could get both of their information, both sides of the story, so I fill out a report on the incident.

After leaving the neighbor, Officer Hadden pulled up behind Defendant's Jeep at a stop sign. The officer testified that, as he came up behind Defendant, his intention was not to make a traffic stop but just to get his attention. The officer stated he "hit his high beams several times." The officer stated that Defendant rolled through the stop sign without coming to a complete stop and then turned right at a high rate of speed. He testified that the speed limit was 25 m.p.h., and Defendant was probably doing 35 m.p.h. He heard Defendant's tires squeal as they came around the turn. The officer responded by putting on his blue lights to initiate a traffic stop.

Defendant initially refused to stop. The officer called into the station to report that Defendant was not stopping. The officer subsequently turned his siren on to get Defendant's attention. One of the officer's supervisors came over the radio and advised Officer Hadden to "back off" Defendant's vehicle. Defendant then made a left turn after traveling approximately one-tenth of a mile. The officer stated that Defendant was

traveling at a high rate of speed as they approached the corner. Defendant finally came to a stop after making the turn. The officer testified "[Defendant] stopped in a manner that the vehicle slid approximately five feet, hard brakes coming out." The officer further stated Defendant stopped right in front of a group of kids who were playing in the street. The children scattered after seeing Defendant and the police car stop in front of them.

The officer approached Defendant and asked him to turn off the vehicle. Defendant was on his car phone at the time, and his dog was barking at the officer from the back seat of the vehicle. For his own safety, the officer asked Defendant to hang up the phone, turn off the car, and step to the rear of the vehicle. Defendant refused. The officer took the phone out of Defendant's hand and escorted him to the rear of the vehicle. Officer Hadden testified he smelled the odor of alcohol and asked Defendant to participate in a field sobriety test. Defendant refused. The officer testified that he placed Defendant under arrest due to Defendant's driving and the odor of alcohol.[1]

Defendant was eventually taken down to the police station where he refused to take a breathalyzer test. The officer on duty testified that he smelled an odor of alcohol on Defendant. Defendant posted bond and requested a jury trial.

By letter dated August 2, 1996, the Myrtle Beach Municipal Court instructed Defendant to appear either personally or through counsel on August 21, 1996.[2] The notice further informed Defendant that any defendants with bonds posted, failing to appear, shall forfeit the bond and be tried in their absence. Defendant nor his attorney appeared at court on August 21. Defendant's bond was subsequently forfeited, and he was convicted without a jury for DUI.

On August 28, 1996, Defendant made a motion before the municipal court to have his conviction reopened. Defendant

---

1. During this time, Defendant's dog escaped from his car. The officer called for animal control to come pick up the dog. Defendant repeatedly asked the officer to let him go so that he could recapture his dog. For his own safety, the officer refused to release him from his handcuffs.

2. Defendant's case was scheduled for trial during a four-day term of court on September 10, 11, 12, and 13, 1996.

explained in the motion that the failure of his attorneys to appear on August 21, 1996, was "due to confusion." The municipal court granted the motion, reversed the conviction, and remanded for trial. Prior to the second proceeding, Defendant moved for a directed verdict, arguing the second trial subjected him to Double Jeopardy. Further, following the testimony of Officer Hadden, Defendant made a motion to dismiss, arguing the officer did not have probable cause or reasonable suspicion to initiate the traffic stop. The court denied the motion, and Defendant was ultimately convicted of DUI.

At trial, Defendant disputed much of Officer Hadden's testimony. Defendant claimed he did come to a complete stop at the stop sign. However, Defendant admitted having one beer at a Holiday Inn before visiting his client on April 17. Defendant further claimed that at no point was he going at a high rate of speed. Defendant stated that he did not know the police officer was following him until the officer turned on his blue lights and siren. Defendant denied stopping near any children on the road.

On January 26, 1997, Defendant appealed his conviction to circuit court. By order dated April 8, 1998, the circuit court affirmed Defendant's conviction. Defendant appeals to this Court, raising the following issues:

(1) Did the circuit court err in failing to vacate Defendant's conviction due to the fact that the arresting officer had no probable cause or reasonable suspicion to stop Defendant's vehicle?

(2) Did the circuit court err in failing to vacate Defendant's conviction pursuant to the Double Jeopardy and Due Process clauses of the United States and South Carolina Constitutions?

## LAW/ANALYSIS

### A. TRAFFIC STOP

■ Defendant argues that Officer Hadden lacked probable cause or reasonable suspicion to stop Defendant's vehicle. We disagree.

■ In resolving this issue, the facts must be considered in two parts. The first part includes those facts leading up to

Defendant's first traffic violation, i.e., running the stop sign. The second part includes those facts ending with Defendant's arrest for DUI. Defendant argues that under the first set of facts, there was no lawful justification for making a traffic stop. This being the case, Defendant contends that any evidence gathered after that point was tainted and not admissible at trial. Defendant in effect argues the "fruit of the poisonous tree" doctrine.[3]

A traffic stop is a limited seizure more like an investigative detention than a custodial arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Thus, in analyzing such investigative detentions, courts employ the standard articulated by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under this standard, "a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke that suspicion." *Berkemer*, 468 U.S. at 439, 104 S.Ct. at 3150, 82 L.Ed.2d 317. In the instant case, Officer Hadden arrived on the scene shortly after Defendant had left with his dog. In fact, Officer Hadden passed Defendant's Jeep on the street while traveling to the complainant's residence. After briefly speaking with the complainant, Officer Hadden then left to go talk with Defendant. Assuming Defendant's conduct in letting his dog run loose could have violated some law, we believe Officer Hadden would be justified in making the stop. *See McFadden v. United States*, 814 F.2d 144 (3rd Cir.1987) (officer had reasonable suspicion to make traffic stop where officer arrived moments after defendant had left the hospital where defendant had allegedly trespassed). However, in their brief, the State fails to cite to any specific law or ordinance that Defendant may have violated.[4] It was not until oral

---

**3.** The "fruit of the poisonous tree" doctrine provides that evidence must be excluded if it would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality. *State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996).

**4.** The State does cite to S.C. Ann. §§ 47–3–20, –50, & –70 (1987). However, these sections simply empower counties to enact ordinances

argument that the State argued Defendant's conduct in allowing his dog to run loose violated certain county ordinances. It is axiomatic that oral argument may not be used as a vehicle to argue issues not argued in the appellate brief. *See Bochette v. Bochette,* 300 S.C. 109, 386 S.E.2d 475 (Ct.App.1989).

However, even assuming Officer Hadden's initial attempt to stop Defendant would have violated the Fourth Amendment, Officer Hadden was nonetheless justified in making the stop after Defendant committed the subsequent traffic infractions. An automobile stop is subject to the constitutional imperative that it not be "unreasonable" under the circumstances. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). As a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred. *Id.* Although disputed by Defendant, Officer Hadden testified he witnessed Defendant roll through a stop sign and then speed through a residential neighborhood. Under *Whren,* these traffic infractions provided Officer Hadden with probable cause to make the traffic stop. The question is whether the stop was nonetheless tainted because Officer Hadden's initial attempt to stop Defendant may have been unlawful.

In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the United States Supreme Court declined to hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. *See* 5 W. Lafave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 11.4 (3d ed. 1996). Since *Wong Sun,* courts have recognized that new and distinct criminal acts following an illegal stop do not qualify as fruit of the poisonous tree simply because such acts were causally connected to the police misconduct. *See* John Wesley Hall, Jr., *Search and Seizure,* at 364 (2d ed. 1991). For instance, in *United States v. Nooks,* 446 F.2d 1283 (5th Cir. 1971), the court refused to suppress evidence discovered in the trunk of a car even though the initial stop had been illegal, when, subsequent to the initial stop, the defendant fled from

---

and regulations for the control of dogs. They do not proscribe specific conduct.

the police at speeds in excess of 100 m.p.h. and fired several shots at them.

This concept was further developed in *United States v. Bailey*, 691 F.2d 1009 (11th Cir.1982) where the defendant, who was being escorted by police to the precinct, broke free and fled from police in an airport. The defendant was eventually arrested and searched, whereupon the police discovered cocaine. At trial, the defendant moved to suppress the drugs as the products of an illegal arrest and search. The Eleventh Circuit affirmed the denial of the motion, stating: "we conclude that notwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime then the police may arrest the defendant for that crime." 691 F.2d at 1016–17. The court further stated: "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." *Id.* at 1017.

The Fourth Circuit also addressed this issue in *United States v. Sprinkle*, 106 F.3d 613 (4th Cir.1997). In *Sprinkle*, the police followed and eventually pulled up behind the defendant's parked car. The police turned on their blue lights and approached the vehicle. The defendant stepped out of his car, and the police initiated a patdown search. While the police were conducting the search, the defendant broke free and began running from police. During the chase, the defendant produced a gun and fired a single shot at police. The defendant was eventually arrested. At trial, the defendant moved to suppress the admission of the gun as fruit of an illegal search and seizure. The Fourth Circuit first concluded that the police did not have any reasonable suspicion to stop the defendant. Nevertheless, the court held that the defendant's intervening illegal acts of running from and shooting at the police made the gun admissible. The court stated: "There is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest." 106 F.3d at 619.

In the instant case, even assuming Officer Hadden's initial attempt to stop Defendant was unlawful, Defendant's acts of

running the stop sign and speeding through the neighborhood constituted new and distinct crimes for which Officer Hadden had probable cause to stop Defendant. *See Whren, supra.* Thus, any evidence lawfully obtained as a result of the stop was admissible at Defendant's trial.

## B. DOUBLE JEOPARDY

Defendant argues that since his first conviction was unlawful, the act of trying him again violated the Double Jeopardy Clauses of the United States and South Carolina Constitutions. We disagree.

The Fifth Amendment to the United States Constitution states: "... nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb...."[5] U.S. Const. amend. V. The Double Jeopardy clause protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *State v. Price,* 333 S.C. 267, 510 S.E.2d 215 (1998); *State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997); *State v. Owens,* 309 S.C. 402, 424 S.E.2d 473 (1992).

None of the above scenarios exist in the instant case. Here, it was on Defendant's own motion that the conviction was reopened. The municipal court granted the motion and reversed Defendant's conviction, remanding the case for a new trial. It was not until Defendant moved for a directed verdict in the second trial that he argued that the first conviction was unconstitutional because no evidence was presented and no jury assembled.

It is well established that where a verdict is set aside by a defendant's own motion and a new trial granted, the defendant may be again tried for the offense. *See State v. Gillis,* 73 S.C. 318, 53 S.E. 487 (1906) (holding that a defendant indicted for murder and convicted of manslaughter may again be tried for murder when a new trial is ordered on defendant's own motion). Moreover, while a determination

---

5. The South Carolina Constitution contains a similar provision which states: "No person shall be subject for the same offence to be twice put in jeopardy of life and liberty...." S.C. Const. art. I, § 12.

that the evidence was insufficient to support a conviction ordinarily precludes a retrial, the Double Jeopardy clause does not preclude retrial of a defendant whose conviction was set aside because of trial error. *Riddle v. State*, 314 S.C. 1, 443 S.E.2d 557 (1994); *see also United States v. Green*, 139 F.3d 1002 (4th Cir.1998). In this case, the first conviction was not reversed or vacated because the evidence was insufficient to support the conviction. Rather, the reversal was sought and granted on Defendant's own arguments that his attorneys were confused about when to appear before the municipal court. Therefore, Defendant's retrial did not violate Double Jeopardy.

## CONCLUSION

Based on the foregoing, Defendant's conviction is **AF-FIRMED.**